UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE LEE JACKSON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>R.M. HOUSTON, Associate Warden; COOK, Administrative Segregation Unit Lieutenant; J.C. MARTINEZ, Adminsitrative Segregation Unit Sergeant; H. MENDEZ, Administrative Segregation Unit Sergeant; RODRIGUEZ, Administrative Segregation Unit Sergeant; CLARK, Adminsitrative Segregation Unit Sergeant; D. BARRETO, Correctional Officer; L. CORDOVA, Correctional Officer; DOES 1-8 ,<br><br>　　　　　　　　　　Defendant. | Civil No.   07-cv-1108-L (POR)<br><br>**REPORT AND RECOMMENDATION THAT DEFENDANTS' MOTIONS TO DISMISS BE DENIED IN PART AND GRANTED IN PART**<br><br>**[Doc. Nos. 14 and 15.]** |

This Report and Recommendation is submitted to United States District Judge M. James Lorenz pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3 of the United States District Court for the Southern District of California.

**I. PROCEDURAL BACKGROUND**

Plaintiff, an inmate currently incarcerated at the California State Prison in High Desert State Prison in Susanville, California, and proceeding pro se and *in forma pauperis*, is proceeding with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff claims that, while he was incarcerated at Centinela State Prison ("CEN"), the various prison officials named as Defendants in

1 his Complaint deprived him of his Eighth Amendment right to be free of cruel and unusual
2 punishment by suspending his outdoor recreation privileges for six weeks (forty-two days). See
3 Compl. at 7-8. Plaintiff also alleges CEN officials violated his due process rights by failing to
4 schedule him for a hearing before the Institutional Classification Committee ("ICC") within ten days
5 of restricting his outdoor recreation privileges. See id. at 7. Plaintiff seeks declaratory and
6 injunctive relief as well as compensatory and punitive damages. Id. at 8.

7 On December 10, 2007, Defendants R. Houston, D. Barretto, Bl. Clark, H. Mendez, and J.
8 Rodridguez filed a motion to dismiss. [Doc. No. 14.] On December 24, 2007, Defendant Martinez
9 filed a separate motion to dismiss in which he incorporated by reference all of the defenses of the
10 December 10, 2007 motion to dismiss.[1] [Doc. No. 15.] Collectively, Defendants assert Plaintiff (a)
11 has failed to meet the objective and/or subjective elements of his Eighth Amendment claim and (b)
12 has failed to show a violation of procedural due process. Alternatively, Defendants seek qualified
13 immunity as to both of Plaintiff's claims. Per this Court's May 22, 2008 Order, Plaintiff's Response
14 was due by June 16, 2008. See Doc. No. 28. Plaintiff did not file a Response.

15 **II. FACTUAL ALLEGATIONS**

16 On September 15, 2004, Defendant Houston allegedly loudly chastised the Administrative
17 Segregation Unit ("ASU") supervisor and demanded that extra bed-space be provided for incoming
18 Administrative Segregation inmates. Compl. at 3-4. Defendant Houston then advised the inmates,
19 including Plaintiff, who was an inmate in ASU at the time, that failure to accept a cell mate would
20 result in a Rule Violation Report and immediate yard suspension. Id. at 4. Upon Defendant
21 Houston's departure, Defendants Cook, Mendez, Cordova, and Reyes ordered the prisoners to
22 accept cell mates. Id. At this point, Defendant Mendez placed a sign above Plaintiff's cell door that
23 read "Yard Suspended Pending ICC."[2] Id.

24 On September 20, 2004, Plaintiff received a Rule Violation Report ("Report") dated

---

[1] Defendant Martinez was served after the Defendants who submitted the Motion to Dismiss listed as Docket Number 14. Defendant Cook has not yet been served as of the date of this Report and Recommendation.

[2] Plaintiff does not state in his complaint whether or not he refused to accept a cell mate.

1 | September 15, 2004. Id. In the Report, it is noted that, upon a direct order by Defendant Mendez to
2 | accept a cell mate, Plaintiff replied, "I am not taking a cellie." See Doc. No. 14, Decl. Of D.
3 | Hanlon. On September 23, 2004, Plaintiff attended a hearing concerning the rule violation. Id. At
4 | the hearing, Plaintiff was found guilty of the rule violation and given a thirty-day forfeiture of
5 | behavior credits. Id.

6 | Approximately two weeks later, Plaintiff summoned Defendant Mendez to his cell door and
7 | asked why Plaintiff had not gone to ICC. Compl. at 4. Defendant Mendez replied, "Call me when
8 | you're ready to accept a cellie" and purportedly walked away. Id. On October 9, 2004, Plaintiff
9 | contacted Defendants Rodriguez and Barretto requesting that they review his file to determine
10 | whether Defendant Mendez had scheduled Plaintiff for ICC. Id. During the subsequent weeks,
11 | Plaintiff attempted to speak to Defendant Mendez by calling his name aloud as he passed Plaintiff's
12 | cell, whereupon Defendant Mendez would say, "Call me when you're ready to accept a cellie." Id.
13 | at 5.

14 | On October 28, 2004, Plaintiff was summoned before ICC. Compl. at 5. There, Plaintiff
15 | notified Defendant Houston that he had been denied his outdoor recreation privileges for forty-two
16 | days. Id. Defendant Houston subsequently ordered Defendant Martinez to remove the yard
17 | suspension sign from Plaintiff's cell door. Id.

18 | On November 12, 2004, Plaintiff filed an Administrative Appeal regarding the
19 | aforementioned incidents. See Compl. at 5. On December 1, 2004, Defendant Houston denied the
20 | complaint at the First level. Id. On January 2, 2005, Plaintiff processed the complaint at the Second
21 | level. Id. On February 9, 2005, the complaint was denied at the Second level. Id. On February 22,
22 | 2005, Plaintiff processed the complaint at the Third level. Id. On May 25, 2005, the complaint was
23 | granted in part at the Director's level. Id. CEN was ordered to conduct and document further
24 | investigation into Plaintiff's allegations and to report the disposition to Plaintiff. Id.

### III. DISCUSSION

26 | A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the
27 | legal sufficiency of the claims in the complaint. A claim cannot be dismissed unless it "appears
28 | beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle

him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002); Knevelbaard Dairies v. Kraft Foods, Inc, 232 F.3d 979, 984 (9th Cir. 2000). In order to survive a motion to dismiss, a plaintiff must "allege overt acts with some degree of particularity such that his claim is set forth clearly enough to give defendants fair notice of the type of claim being pursued." Ortez v. Washington County, 88 F.3d 804, 810 (9th Cir. 1996).

The court must accept as true all material allegations in the complaint, as well as reasoned inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. N.L. Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Display Research Laboratories, Inc. v. Telegen Corp., 133 F. Supp. 2d 1170, 1173 (N.D. Cal. 2001).

Where a plaintiff appears in *propria persona* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, however, the court may not "supply essential elements of claims that were not initially pled." Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Vague or conclusory allegations are not sufficient to withstand a motion to dismiss in civil rights violations. Id.; see also Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9 th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a claim under section 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." Jones, 733 F.2d at 649 (internal quotation omitted).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). "The focus of any Rule 12(b)(6) dismissal . . . is the

1  complaint." Id. at 1197 n.1.  However, the court may consider documents or exhibits "whose
2  contents are alleged in a complaint and whose authenticity no party questions." Branch v. Tunnell,
3  14 F.3d 449, 454 (9th Cir. 1994);  Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555
4  (9th Cir. 1990);  Stone v. Writer's Guild of Am. W. Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

5  Where a *pro se* litigant's claim is dismissed for failure to state a claim, leave to amend
6  should be granted unless "it is absolutely clear that the deficiencies of the complaint could not be
7  cured by amendment."  Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007)(quoting Schucker
8  v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).  Prior to a final dismissal of a claim, "a *pro*
9  *se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend." Lucas
10 v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

11 **A.     EIGHTH AMENDMENT**
12 **a.     Deprivation of Outdoor Exercise**

13 Defendants seek dismissal of this claim on the ground that Plaintiff has failed to meet the
14 objective and/or subjective elements of an Eighth Amendment claim.  Alternatively, Defendants
15 seek qualified immunity as to this claim.

16 The Eighth Amendment prohibits the imposition of cruel and unusual punishments and
17 "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency."
18 Estelle v. Gamble, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted); see also Hutto
19 v. Finney, 437 U.S. 678, 685 (1978).  "No static 'test' can exist by which courts determine whether
20 conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning
21 from the evolving standards of decency that mark the progress of a maturing society.'" Rhodes v.
22 Chapman, 452 U.S. 337, 346 (1981) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

23 "The Constitution 'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S.
24 825, 832 (1994) (quoting Rhodes, 452 U.S. at 349).  Even so, "[d]eprivation of outdoor exercise
25 violates the Eighth Amendment rights of inmates confined to continuous and long-term
26 segregation."  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing Spain v. Procunier, 600
27 F.2d 189, 199 (9th Cir. 1979)), amended by 135 F.3d 1318 (9th Cir. 1998).

28 To assert an Eighth Amendment claim for deprivation of humane conditions of confinement,

1  a prisoner must satisfy two requirements: one objective and one subjective. See Farmer, 511 U.S. at
2  834. "First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's
3  act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' . . .
4  The second requirement follows from the principle that 'only the unnecessary and wanton infliction
5  of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a
6  prison official must have a 'sufficiently culpable state of mind.'" Id. That state of mind is shown
7  when Plaintiff can prove "deliberate indifference." See id. "Deliberate indifference" is evidenced
8  only when "the official knows of and disregards an excessive risk to inmate health or safety; the
9  official must be both aware of the facts from which the inference could be drawn that a substantial
10 risk of serious harm exists, and he must also draw that inference." Id. at 837.

11       Plaintiff alleges the various prison officials named as Defendants in his Complaint deprived
12 him of his Eighth Amendment right to be free of cruel and unusual punishment by suspending his
13 outdoor recreation privileges for six weeks. See Compl. at 7-8. To present an Eighth Amendment
14 claim, Plaintiff must show, first, that the deprivation was, objectively, 'sufficiently serious.' See
15 Farmer, 511 U.S. at 834. Second, Plaintiff must show that the deprivation was committed with
16 deliberate indifference. See id.

17                     **i.**       **Objective Element**

18       The Ninth Circuit has held that outdoor exercise is "one of the basic human necessities
19 protected by the Eighth Amendment." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993). Not
20 all deprivations of outdoor privileges, however, constitute an Eighth Amendment violation. See
21 Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) ("the deprivation of outdoor exercise *could*
22 constitute cruel and unusual punishment") (emphasis added). That is, only 'substantial deprivations'
23 of outdoor exercise privileges constitute an Eighth Amendment violation. See Lopez v. Smith, 203
24 F.3d 1122, 1133 (9th Cir. 2000).

25       The issue before the Court, then, is whether Plaintiff's forty-two day denial is a 'substantial
26 deprivation' for purposes of his Eighth Amendment claim. In determining what can be held a
27 'substantial deprivation,' the Ninth Circuit has distinguished those denials of outdoor privileges that
28 are "long-term" from those that are "temporary." See Lopez, 203 F.3d at 1133. Under May v.

1  Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), the Ninth Circuit held that "a temporary denial of
2  outdoor exercise with no medical effects is not a substantial deprivation." There, the deprivation
3  was twenty-two days. Id. In Allen, the Court of Appeals held that a six-week denial of outdoor
4  privileges constituted a 'substantial deprivation.' 48 F.3d at 1088.
5      The Court in Lopez distinguished May and Allen. 203 F.3d at 1132-33. There, the Court
6  was asked to determine whether a six-and-one-half-week denial of outdoor exercise was a
7  'substantial deprivation.' Id. at 1132. Noting the relevance of the duration of deprivations of
8  prisoners' outdoor privileges, the Court of Appeals held that a twenty-two-day denial, as in May,
9  was "temporary" and, thus, by itself not a 'substantial deprivation,' whereas a six-week denial was
10 "long term," as in Allen, and was a 'substantial deprivation' without any additional showing. See
11 203 F.3d at 1133 fn.15. As a result, the Lopez Court held a six-and-one-half week deprivation was
12 'substantial.' Id. at 1133.
13     Because Plaintiff, like the plaintiff in Allen, was deprived of his outdoor exercise privileges
14 for six weeks, that deprivation is "long-term" and thus constitutes a 'substantial deprivation' for
15 purposes of his Eighth Amendment claim  Therefore, Plaintiff has met the objective element of such
16 a claim.
17                    **ii.    Subjective Element**
18     Plaintiff alleges all Defendants acted with deliberate indifference with respect to the
19 deprivation of his outdoor privileges. As noted earlier, "deliberate indifference" is found when a
20 prison official "knows of and disregards an excessive risk to inmate health or safety; the official
21 must both be aware of facts from which the inference could be drawn that a substantial risk of
22 serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Here,
23 Defendant Mendez placed a sign over Plaintiff's cell door that read "Yard Suspended Pending ICC"
24 after Plaintiff refused to accept a cell mate as ordered. For six weeks thereafter, Defendant Mendez
25 was both aware of Plaintiff's denied outdoor privileges and was able to draw the inference that his
26 behavior would perpetuate the risk of serious harm. Although Defendant Mendez may assert he was
27 acting based upon a disciplinary need, such an argument is not appropriate within the context of a
28 motion to dismiss.

1       Defendants assert Plaintiff's Eighth Amendment claim should be dismissed as to Defendants
2 Houston, Rodriguez, Clark, Martinez, Barreto and Cordova because Plaintiff has not alleged that
3 these defendants knew the reason for the yard suspension and/or could not be expected to monitor
4 the scheduling of Plaintiff's ICC hearing.  See Doc. No. 14 at 10.  In the Complaint, however,
5 Plaintiff alleges "Supervisory Defendant's [*sic*] knew that plaintiffs [*sic*] yard had been suspended,"
6 that they "knew that plaintiffs [*sic*] yard wouldn't be restored unless he was seen by ICC," and that
7 they "wilfully ignored plaintiff's Suspended Yard Status."  Compl. at 6.  Plaintiff further alleges
8 "Subordinate Defendant's [*sic*] knowingly and wilfully enabled the arbitrary abrogation of plaintiffs
9 [*sic*] right's [*sic*] by failing to notify other Supervisory personnel."  Id. at 7.  Reading the Complaint
10 liberally and taking it in the light most favorable to Plaintiff, it can reasonably be inferred that
11 Defendants were either responsible for or aware of the alleged constitutional deprivation and did
12 nothing to prevent it.
13       Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss for failure to
14 allege an Eighth Amendment claim be **DENIED**.

15           **b.**      **Qualified Immunity**

16       Defendants further claim they are entitled to dismissal based on their qualified immunity.
17 The entitlement to qualified immunity "is an immunity from suit rather than a mere defense to
18 liability."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  "Qualified immunity" protects
19 "government officials . . . from liability for civil damages insofar as their conduct does not violate
20 clearly established statutory or constitutional rights of which a reasonable person would have
21 known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  This standard "'gives ample room for
22 mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate
23 the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475
24 U.S. 335, 343 (1986); Saucier v. Katz, 533 U.S. 194, 205 (2001) ("The concern of the immunity
25 inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on
26 particular police conduct."); Jeffers v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001).

27           **i.**      **Step One - Constitutional Violation**

28       The required first step in a qualified immunity analysis is, "taken in the light most favorable

1 to the party asserting the injury, do the facts alleged show the officer's conduct violated a
2 constitutional right?" <u>Saucier</u>, 533 U.S. at 201; <u>Johnson v. County of Los Angeles</u>, 340 F.3d 787,
3 791 (9th Cir. 2003) (noting that because qualified immunity is "'an entitlement not to stand trial' . . .
4 courts, not juries, 'must' settle the ultimate questions of qualified immunity") (<u>quoting</u> <u>Mitchell</u>, 472
5 U.S. at 526). "If no constitutional right would have been violated were the allegations established,
6 there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>, 533 U.S. at 201.

7    "Although a defendant's subjective intent is not relevant to the qualified immunity defense,
8 his mental state is relevant where it is an element of the alleged constitutional violation." <u>Jeffers</u>,
9 267 F.3d at 911 (<u>citing</u> <u>Crawford-El v. Britton</u>, 523 U.S. 574, 598 (1998)). When a prisoner's cause
10 of action arises under the Eighth Amendment, the defendant's subjective intent comprises an
11 essential element of an affirmative case. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 303 (1991). Thus, in
12 an Eighth Amendment case, such as this one, while the court must accept his factual allegations as
13 true, <u>Saucier</u>, 533 U.S. at 201, Defendants' assertion of a qualified immunity defense requires
14 Plaintiff to further put forth "specific, nonconclusory allegations that establish improper motive."
15 <u>Crawford-El</u>, 523 U.S. at 598 (<u>quoting</u> <u>Siegert v. Gilley</u>, 500 U.S. 226, 236 (1991) (Kennedy, J.,
16 concurring in judgment)); <u>Jeffers</u>, 267 F.3d at 911. In <u>Jeffers</u>, the Ninth Circuit noted that
17 <u>Crawford-El</u> "applied the specificity requirement in reviewing summary judgment on a plaintiff's
18 affirmative case," but found "no principled reason why [the court] should use a different standard in
19 reviewing ... the affirmative defense of qualified immunity. <u>Jeffers</u>, 267 F.3d at 907.

20    Therefore, in cases like this one, where subjective intent is an essential element of the cause
21 of action, the qualified immunity analysis still begins with an examination of whether, taking the
22 facts in the light most favorable to Plaintiff, a constitutional violation has been alleged. <u>Saucier</u>, 533
23 U.S. at 201; <u>Jackson</u>, 268 F.3d at 651. *However*, as part of that showing, the plaintiff must "put
24 forth specific, nonconclusory factual allegations" that establish improper motive in order to defeat
25 the defendant's claims to qualified immunity. <u>Crawford-El</u>, 523 U.S. at 598; <u>Jeffers</u>, 267 F.3d at
26 907.

27    Here, Plaintiff must allege facts sufficient to show that each of the Defendants acted with
28 "deliberate indifference" by denying him outdoor exercise for forty-two days in order to establish, as

a matter of law, that each Defendant violated the Eighth Amendment. See Hope v. Pelzer, 536 U.S. 730, 738 (2002); Jeffers, 267 F.3D at 907. If, in answering this threshold question, the Court finds that "no constitutional violation would have occurred were [Plaintiff's] allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201; Haynie, 339 F.3d at 1078. As stated above, this Court has found that Plaintiff has adequately alleged an Eighth Amendment claim as to each Defendant for the denial of outdoor exercise for a period of forty-two days.

Accordingly, because Plaintiff's allegations survive the first prong of qualified immunity analysis, the Court must turn to the next: whether "it would be clear to a reasonable officer that [t]his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

### ii.     Step Two - Clearly Established Law

For the reasons discussed above, the Court has found that Plaintiff has alleged facts sufficient to show a violation of his Eighth Amendment rights. Saucier, 533 U.S. at 201 (noting that often "[i]n course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for holding that a right is clearly established."). Therefore, the Court must next decide whether the "contours" of the right are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In that particular case, Defendants should have been aware of the legal standards as set forth by the Ninth Circuit regarding an Eighth Amendment claim for deliberate indifference based on the deprivation of outdoor exercise for a lengthy period of time. See Spain, 600 F.2d at 189.

Plaintiff alleges a deprivation of any outdoor exercise for forty-two days with a sign hanging over his cell door during that period reading "Yard Suspended Pending ICC." Although a temporary denial of outdoor exercise in response to a genuine emergency does not violate the Eighth Amendment, it was clearly established at the time the alleged deprivation took place that an extended period of time without outdoor exercise violates the Eighth Amendment. Here, Plaintiff has alleged that Defendants made no attempt to allow yard release for forty-two days.

This Court finds it is clearly established that the denial of outdoor exercise for prison inmates

for an extended period of time is a violation of the Eighth Amendment.  See Spain, 600 F.2d at 189.  Any reasonable official would understand that the denial of outdoor exercise for an extended period of time would constitute deliberate indifference.  Further, the "clearly established" inquiry focuses on whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," see Saucier, 533 U.S. at 202, or whether the state of the law at the time gave "fair warning" to Defendants that the denial of outdoor exercise was unconstitutional.  Hope v. Pelzer, 536 U.S. 730, 740 (2002).  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case." Saucier, 533 U.S. at 201.  Officials, however, "can still be on notice that their conduct violates established law, even in novel factual circumstances." Hope, 536 U.S. at 741.  Specificity only requires that the unlawfulness be apparent under pre-existing law.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

As discussed above, the general law regarding outdoor exercise for prisoners was clearly established in 2004, when the alleged deprivation occurred.  Thus, even if "a resolution of the factual issues may well relieve the prison officials of any liability in this case," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002), Saucier instructs the Court at this stage of the proceedings to presume the Plaintiff's version of events as true.  Saucier, 533 U.S. at 201.

For these reasons, the Court **RECOMMENDS** that the motion to dismiss based on qualified immunity be **DENIED**.

**B.     PROCEDURAL DUE PROCESS**

Defendants also seek dismissal of this claim on the ground that Plaintiff received procedural due process.  Alternatively, Defendants seek qualified immunity as to this claim.

The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  See Ingraham v. Wright, 430 U.S. 564, 569 (1972).  Liberty interests can arise both from the Constitution and from state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983).  A liberty interest being found, the court then seeks to determine what process is due to an inmate.  See Wilkinson v. Austin, 545 U.S. 209, 224-25 (2005).  Rather than establishing rigid rules, the Court has elected the consideration of three distinct factors established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The initial question before the Court is whether Plaintiff has asserted a cognizable liberty interest. Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. Wolff v. McDonnell, 418 U.S. 539, 564-71 (1973). These healthy procedural protections, however, adhere only when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Ramirez v. Galaza, 334 F.3d 850, 860 (2003) ("If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process.") (citations omitted). The Supreme Court has identified few protected liberty interests. See, e.g., Vitek v. Jones, 445 U.S. 480, 493 (1980) (identifying the freedom from transfer to a mental hospital as a protected liberty interest); Washington v. Harper, 494 U.S. 210, 221-22 (1990) (identifying the freedom from the involuntary administration of psychotropic drugs as a protected liberty interest).

Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, the Court relies on a "condition or combination of conditions or factors [that] requires case by case, fact by fact consideration." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). Specifically, the Court looks to three guideposts by which to frame the inquiry: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. Sandin, 515 U.S. at 486-87; Keenan, 83 F.3d at 1089.

Under Sandin, the Court cannot say that the deprivation of Plaintiff's outdoor privileges constitutes "a dramatic departure from the basic conditions of [Plaintiff's] ... sentence." 515 U.S. at

486. As the <u>Sandin</u> Court noted, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." <u>Id.</u> Plaintiff here was deprived of his outdoor privileges for forty-two days due to his refusal to comply with orders to accept a cell mate. The deprivation comports with the prison's discretionary authority, Plaintiff was aware that he could end his deprivation of outdoor privileges at any time by accepting a cell mate, and the condition complained of would not extend the duration of Plaintiff's sentence. As such, Plaintiff has failed to allege a constitutionally protected liberty interest.

In light of the foregoing analysis, the Court need not address Defendants' qualified immunity defense.

Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss for failure to assert a due process violation be **GRANTED**.

## IV. CONCLUSION

For all of the above reasons, the Court **RECOMMENDS** that:

1) Defendants' Motion to Dismiss be **DENIED** with respect to the Eighth Amendment claim as to all Defendants.

2) Defendants' Motion to Dismiss be **GRANTED** with respect to the Procedural Due Process claim as to all Defendants.

3) Defendants be directed to answer the remaining claim within thirty (30) days of the Court issuing an order on the Motion to Dismiss.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **February 25, 2009** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

//
//
//
//

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **ten days after being served with the objections**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 26, 2009

_____
LOUISA S PORTER
United States Magistrate Judge

cc:  The Honorable M. James Lorenz
     All parties